**AMERICAN PRIDE CO-OP,**
**Plaintiff–Appellee,**

v.

**Andy SEEWALD, a/k/a Andrew Seewald,**
**Defendant–Appellant.**

**No. 97CA0198.**

Colorado Court of Appeals,
Div. I.

Oct. 15, 1998.

Clanahan, Tanner, Downing and Knowlton, P.C., Richard L. Shearer, Dino A. Ross, Denver, for Plaintiff–Appellee.

Robert G. Hancock, Louisville, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Andrew Seewald, appeals from the judgment entered upon a jury verdict against him and in favor of plaintiff, American Pride Co-op (American Pride), on its claim of breach of contract. On appeal, Seewald challenges the propriety of certain jury instructions. We reverse and remand for a new trial.

In March 1995, a representative of American Pride had several telephone conversations with Seewald about the purchase of corn. According to American Pride, in the course of those conversations Seewald entered into four separate oral contracts to sell corn to American Pride in the fall of that year. Within a few days after the discussions, American Pride sent written confirmations of the oral agreements to Seewald. However, Seewald neither signed nor returned those documents.

According to American Pride, immediately after each oral agreement was entered into, it contacted a third party and entered into contracts for the resale of the corn it was purchasing from Seewald.

Later that year, Seewald denied having entered into any enforceable contracts with American Pride and refused to deliver the corn. As a result of that refusal, American Pride was forced to "buy back" its contracts from the third party.

Alleging breach of contract and promissory estoppel, American Pride brought this action seeking reimbursement from Seewald of the amounts it had paid to buy back the contracts from the third party. In addition to

returning a general verdict in favor of American Pride on the breach of contract claim, the jury filled out a special advisory verdict containing findings in favor of American Pride on the elements of its equitable claim based on promissory estoppel. The court entered judgment on the jury's verdict on the breach of contract claim.

## I.

Seewald contends that the trial court misallocated the burden of proof in instructing the jury as to the so-called "merchant exception" to the statute of frauds. We agree.

The statute of frauds bars the enforcement of oral contracts for the sale of goods for the price of $500 or more. Section 4-2-201(1), C.R.S.1998. However, under the so-called "merchant exception" to the statute of frauds set forth in §4-2-201(2), C.R.S.1998, such oral contracts may, nevertheless, be enforced if both parties are merchants and a written confirmation is sent within a reasonable time, unless a notice of objection is given within ten days by the party receiving the confirmation.

■ The burden of proving that a contract is unenforceable under the statute of frauds rests upon the party asserting that affirmative defense. *Western Distributing Co. v. Diodosio,* 841 P.2d 1053 (Colo.1992); *see Univex International, Inc. v. Orix Credit Alliance, Inc.,* 902 P.2d 877 (Colo.App. 1995) (statute of frauds constitutes an affirmative defense).

Here, Seewald raised the statute of frauds as an affirmative defense to the enforceability of the four alleged oral agreements. The trial court gave two instructions relating to the statute of frauds. The first listed the elements of American Pride's breach of contract claim and then stated:

If you find by a preponderance of the evidence that [American Pride] and [Seewald] entered into one or more of the oral agreements, then you must also find that the following propositions have been proven by a preponderance of the evidence for American Pride to recover from [Seewald] on its claim that [he] breached one or more

agreement(s) to sell corn to American Pride:

5. That [American Pride] sent written confirmation(s) as to those oral agreement(s) to [Seewald];

6. That [Seewald] did not object in writing to the oral agreement(s) within ten (10) days of the date(s) he received the written confirmation(s); and

7. That [Seewald] failed to deliver the corn to American Pride as required by the oral agreement(s).

The court also gave a separate instruction on the statute of frauds defense which stated, in pertinent part, that:

[Seewald] has the burden of proving his Affirmative Defense of the Statute of Frauds. In order to find for [Seewald] on his Affirmative Defense of the Statute of Frauds, you must find that:

1) [Seewald] is not a 'merchant' for purposes of selling his corn to American Pride;

2) That American Pride failed to send written confirmations of the four alleged oral contracts to [Seewald] within a reasonable time after [he] agreed to sell corn to American Pride;

3) [Seewald] gave written notice of objection to the contents of American Pride's confirmations of the oral contracts within ten (10) days after [he] received the written confirmations from American Pride.

If you find that [Seewald] has proved any one of the foregoing facts by a preponderance of the evidence [he] has met his burden of proof on his Statute of Frauds affirmative defense, and you must find in favor of [Seewald] on [American Pride's] breach of contract claim.

On the other hand, if you find that [Seewald] has failed to establish one or more of the foregoing facts by a preponderance of the evidence, [his] Affirmative Defense of the Statute of Frauds fails, you should find in favor of [American Pride] on its breach of contract claim.

Seewald argues that the two quoted instructions misallocate the burden of proof because the first instruction did not require a finding that American Pride had proven that

Seewald is a merchant, and the second instruction improperly placed the burden on Seewald to prove that he is *not* a merchant, and that a confirmatory writing was *not* sent. We agree that both instructions contained incorrect statements of law.

The affirmative defense of the statute of frauds is found in §4–2–201(1). Seewald presented evidence establishing the requirements under that provision, *i.e.*, that any agreements here were oral and that they were for sales of goods priced at $500 or more. *See Western Distributing Co. v. Diodosio, supra.*

Section 4–2–201(2) establishes an exception to the provisions of 4–2–201(1). It provides:

> Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

Thus, once Seewald had demonstrated that any agreement here was oral and was for $500 or more, it was up to American Pride to make a showing that the elements of the "merchant exception" were met in order to take the oral agreements outside the statute of frauds. *See Dawkins & Co. v. L & L Planting Co.*, 602 So.2d 838 (Miss.1992) (interpreting uniform commercial code provision identical to §4–2–201(2)); *Otto Vehle & Reserve Law Officers Ass'n v. Brenner*, 590 S.W.2d 147 (Tex.Civ.App.1979)(same). *See also* J. White & R. Summers, *Uniform Commercial Code* §2–7 at 97 (1972)(if the statute of frauds has been properly raised as a defense, "[t]he plaintiff will then have the burden at trial of introducing evidence of a legally sufficient writing or evidence establishing that the case falls within an exception to 2–201.").

Here, the first challenged instruction was incorrect because it failed to require American Pride to prove by a preponderance of the evidence that Seewald is a merchant. *See* § 4–2–201(2), C.R.S.1998.

Similarly, the second challenged instruction erroneously assigned Seewald the burden of establishing that he is not a merchant and that no confirmatory writing was sent. *See Dawkins & Co. v. L & L Planting Co, supra; Otto Vehle & Reserve Law Officers Ass'n v. Brenner, supra.*

American Pride contends, however, that any error in the instructions relating to the statute of frauds was harmless. It argues that the judgment can be sustained on the basis of the jury's special advisory verdict which contained findings that American Pride had established the elements of its promissory estoppel claim and that the damages it had suffered as a result of its detrimental reliance on Seewald's promises were in the same amount as the verdict on the breach of contract claim.

In this regard, American Pride correctly points out that the statute of frauds provides no defense to a claim based on promissory estoppel. *See Karakehian v. Boyer*, 900 P.2d 1273 (Colo.App.1994).

However, the jury's findings in its special advisory verdict do not constitute final or binding resolutions with regard to the promissory estoppel claim. Instead, the trial court remains the ultimate fact-finder regarding equitable claims and is required to make its own findings and conclusions to support its judgment. *See Snow Basin, Ltd. v. Boettcher & Co.*, 805 P.2d 1151 (Colo.App. 1990).

Presumably because the jury in its general verdict found in favor of American Pride on the breach of contract claim, the court here did not make any independent findings or enter judgment with regard to the promissory estoppel claim. *See Scott Co. v. MK–Ferguson Co.*, 832 P.2d 1000 (Colo.App. 1991) (promissory estoppel is available only in the absence of an otherwise enforceable contract).

While we are aware that the claims of promissory estoppel and breach of contract were tried simultaneously, we are unable simply to remand with directions to enter a judgment on the promissory estoppel claim based on the jury's special advisory verdict. Our holding here is limited to the conclusion

that the jury was improperly instructed as to the burden of proof concerning the "merchant exception" to the statute of frauds. There has been no determination, either in the trial court or here, that the statute of frauds in fact rendered the alleged oral agreements unenforceable, and a judgment cannot properly be entered on the alternative promissory estoppel claim unless and until there has been such a determination. *See Scott Co. v. MK–Ferguson Co., supra.*

Therefore, we reject American Pride's assertion that the error in the instructions here was harmless and conclude Seewald is entitled to a new trial on American Pride's breach of contract claim. *See Mile Hi Concrete, Inc. v. Matz,* 842 P.2d 198 (Colo.1992).

## II.

Among Seewald's contentions that may arise on remand is his assertion that the court improperly instructed the jury as to the elements to be considered in determining whether he was a merchant. We agree that the court should modify the instruction upon retrial.

Under §4–2–104(1), C.R.S.1998, as pertinent here, a merchant is "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar' to the practices or goods involved in the transaction...." In determining whether a farmer is a merchant pursuant to §4–2–201(2), a trier of fact should consider all relevant factors, including the following:

> (1) the length of time the farmer has been engaged in the practice of selling his product to the marketers of his product; (2) the degree of business acumen shown by the farmer in his dealings with other parties; (3) the farmer's awareness of the operation and existence of farm markets; and (4) the farmer's past experience with or knowledge of the customs and practices which are unique to the particular marketing of the product which he sells.

*Colorado–Kansas Grain Co. v. Reifschneider,* 817 P.2d 637, 640 (Colo.App.1991).

Here, the trial court instructed the jury that:

A 'merchant' is a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction.

In determining whether [Seewald] is a 'merchant' with respect to the sale of his seasonal crops, you should consider as well as any of the relevant factors:

1. The length of the time [Seewald] has been engaged in the practice of selling seasonal crops to *third parties;*

2. The degree of business knowledge, training, education and experience of [Seewald];

3. [Seewald's] awareness of the operation and existence of markets for seasonable crops; and

4. [Seewald's] knowledge of the customs and practices related to the marketing of seasonal crops and those unique to this particular crop, if any. (emphasis added)

■ Seewald argues that this instruction is inconsistent with the opinion in *Colorado–Kansas Grain* because the jury was instructed to consider how long Seewald had been selling his crops to "third parties" rather than to "marketers," which is the term used in that case. He argues that the court's use here of the more general term "third parties" improperly broadened the scope of the definition of a merchant because "marketers" refers to grain merchandisers, such as American Pride, whereas the term "third parties" would include any end users of the product.

Similarly, again relying on the quoted language in *Colorado–Kansas Grain,* Seewald urges that the instruction was improper because it referred to Seewald's experience with and knowledge of the customs and practices unique to the marketing of "seasonal crops" generally, rather than those unique to corn, the specific crop involved here.

While we need not determine whether these challenged aspects of the instruction constituted reversible error, on retrial the court should give an instruction that more closely tracks the language quoted above from *Colorado–Kansas Grain Co. v. Reifs-*

*chneider,* concerning the pertinent factors for determination of the merchant status.

## III.

Seewald also contends that the trial court erred by giving two jury instructions on contract formation that were not supported by the evidence. However, because this argument goes to the sufficiency of the evidence and a retrial is being ordered, we need not address it here.

## IV.

Finally, Seewald argues that certain of the jury instructions improperly assumed the existence of the agreements alleged. We perceive no error.

Seewald objects to the following language in one of the jury instructions: "In order for American Pride to recover from the Defendant on its claim that the *Defendant breached his agreement(s)* to sell corn to American Pride, you must find that the following propositions have been proven by a preponderance of the evidence . . . ." (emphasis added)

Seewald argues that the emphasized language assumed the existence of the alleged contracts. When read in context, however, the instruction merely states that American Pride claimed that Seewald breached certain agreements, and not that the agreements or contracts actually existed. Further, another portion of the instruction specifically required proof that Seewald had "entered into" each of the alleged oral agreements. Accordingly, we find that, under similar evidence on retrial, this instruction could properly be submitted to the jury.

The judgment is reversed, and the cause is remanded for a new trial on American Pride's breach of contract claim.

METZGER and JONES, JJ., concur.